I understand we have Attorney Weinritt for the appellant. And you would like to reserve two minutes for rebuttal? You may proceed whenever you're ready. Good morning, Your Honors. May it please the Court. My name is Tamar Weinritt from Pomeranz, LLP, and I'm here on behalf of the appellant today. Your Honor, the dismissal order in this case rests on multiple factual and legal errors. But the primary legal error at issue is the District Court's failure to credit detailed and corroborated confidential witness statements that show that defendants inflated full year 2022 guidance with false inputs. The confidential witnesses are sufficiently described. They each worked at the company during the relevant time period. They each had firsthand knowledge of the guidance manipulations, and they corroborate one another. Once those allegations are credited, as is required at the pleading stage in accordance with this Circuit's precedent, most recently the decision in Shervin v. Avangoa, the falsity and scienter allegations are plausible, and the dismissal order cannot stand. I recognize that there are multiple categories of misstatement and multiple allegations of scienter here, and I would be happy to address any that would be most helpful to the Court. Your Honor, why don't you at least start with the question of the Starboard witness, or CW? Yes, Your Honor. So the District Court erred in discrediting the allegations of the Starboard witness. But none of the lawyers on your side have spoken to this witness, right? That's correct, Your Honor. So is it the case that you can just lift statements from somebody else's complaint and bring it in here? How does that work? Because I guess I've never seen that before. Your Honor, under this Circuit's precedent in Shervin v. Avangoa, and previous precedent, as long as that confidential witness is sufficiently described, and as long as the plaintiffs in this case conducted their own independent investigation and include corroboratory allegations, as we have here, then that confidential witness's statements can be corroborated. So could somebody, I don't know, file a suit tomorrow, let's say in the Southern District, and just photocopy your complaint? No, they cannot do that, Your Honor. Why not? Fair question. I mean, you're saying everything you have in here is corroborated, so they would be citing some confidential witnesses and have other corroborating information. Yes. However, Your Honor, the Starboard CW allegations were corroborated by witnesses that plaintiffs in this case did correspond with directly, that the attorneys did that. Okay. So you're saying that you corroborated the stuff that you copied. Correct. We conducted our own independent investigation and spoke to corroboratory witnesses that verify the allegations of the Starboard CW. However, Your Honor, under well-accepted precedent, plaintiffs are also entitled to rely, for example, on newspaper articles, as long as the contents of those articles are sufficiently investigated and vetted. Here we have the Starboard action where the action is brought under penalty of Rule 11. There is a sanctions penalty hanging over them if they don't verify their allegations. So on top of the fact that we have independently verified these allegations through our own investigation and through our own confidential witnesses, based on just simple logic, if we were permitted to rely on particularized statements in a newspaper article where there is no penalty of sanctions, then even more so we should be entitled to rely on allegations in a complaint that were brought under penalty of sanctions, as they were here. And, Your Honor, the Starboard CW was sufficiently described. The Starboard CW did work at the company at the relevant time period. And the two CWs in this case, CW1 and CW2, both corroborate and verify from firsthand knowledge the allegations of the Starboard CW. Tell us who exactly CW2 is based on the allegations in the complaint. Yes, Your Honor. I mean, I'm looking at age 21, a senior-level employee in finance. Correct, Your Honor. I mean, that's pretty generic. During the class period. I mean, for a day? For the whole class period? For the entire? Well, it doesn't say for the entire period. I mean, when I read during the class period, that suggests to me at some point during the period. Your Honor, it could be that the language wasn't clear enough, but that meant for the entirety of the class period. In that instance, and in other instances with other CWs as well, had we provided additional detail on top of what was in the complaint, it would have revealed that CW's identity, which is not required. I understand you don't need to disclose your identity, but you do have to give us enough meat so we know with some reliability why this person would have access to the information they claim to have access to, but I'm not really sure what a senior-level employee in finance means. I understood, Your Honor. However, not only was this individual a senior-level employee in finance, but the complaint also makes clear that this individual attended the weekly meetings with defendants and reported to both defendants and witnessed the firsthand manipulations of the guidance numbers and other metrics as well. Had we provided this witness's precise title. Where does it say that CW2 attended the meetings? Because I'm looking at A24. A24 says CW2 made clear that Collins held regular meetings with FP&A teams. Yes, Your Honor. I will find the precise allegation, but there are allegations in the complaint that CW2 did personally attend those meetings. All right. Would it be helpful if I did so while the. . . No, go ahead. Just move along. I can probably find it later. Okay. Are there other categories of misstatements or other specific areas of the argument that would be particularly helpful to the panel if I address, under either the categories of falsity or the allegations of CENTER? I mean, this isn't really related to either of those, but just with regard to the idea of relying on post-dismissal materials, how does that fit in with. . . I mean, that seems like something that might be relevant to the question of leave to amend, but how does that fit into us evaluating the actual dismissal that occurred? Yes, Your Honor. So under Rule of Evidence 201D, this Court is permitted to take judicial notice of materials that were not available at the time the Court issued its dismissal order. But I would agree with Your Honor that it's perhaps most relevant to the question of whether there should be a reversal of the Court's denial of leave to amend. Under this circuit precedent in Lorelei, for example, plaintiffs are usually afforded at least one opportunity to cure deficiencies that are noted in a dismissal order. Here, there's only been one amended complaint, and there's been only one ruling on a motion to dismiss. And nevertheless, the Court denied leave to amend. So it is our position, particularly given the post-dismissal order materials, which are the starboard exhibits noted in the request for judicial notice and cited in the briefing here, that there is certainly cause to, at minimum, reverse the district court's decision on that point. Are there any other areas of DCNs or allegations or falsity, misstatements that would be helpful if I would address those? No. The time is yours. Okay. So at this point in time, I guess I will reserve my last 15 seconds, along with the two minutes for rebuttal at the end. Okay. And we'll let you bank those 15 seconds, too. Sure. Much appreciated. Thank you, Your Honor. Okay. Very good. Why don't we hear for counsel for the appellee, Attorney Simmons. Good morning, Your Honor. There's no assertion in this case that any reported historical financial data was wrong. This is an Omnicare case, a claim that management did not honestly believe their forward-looking forecast at the time they were issued. Now, as you just heard from Ms. Winers, the plaintiffs critically rely on this confidential witness from the Starboard Delaware litigation who they never met, never interviewed. And Judge Engelmeyer obviously had problems with that, but he did not lay down a blanket prohibition on relying on information from other cases. He made a very fact-specific ruling based on the allegations in the complaint here and the lack of factual support for the confidential witness allegations attributed to this Starboard witness. His decision is fully consistent with this Court's decision last October in Sherman v. Abengoa. Because what Sherman requires, as the plaintiffs admitted at page 4 of their reply brief, is that the allegations, if you're going to try to copy them from elsewhere, have to be detailed, independently corroborated, and the product of an independent investigation. Now, in Sherman, for instance, there were two external forensic accounting reviews and specific factual findings by the Spanish National Court, very different from what we're dealing with here in the allegations copied from Starboard. Now, obviously, you know, at the time of the motion to dismiss hearing, the Starboard witness's deposition wasn't even available. That was filed in the Delaware litigation after the fact. But the information that the plaintiffs have now appended in their motion for supplemental consideration in judicial notice that we obviously opposed actually shows why Judge Engelmeyer was right and why any amendment would actually be futile, such that even if you were to consider the post-decision materials, it wouldn't change the result and the decision should be affirmed. What the witness's deposition established, and it's before you, is he was a sales guy, a sales lead with no responsibility for financial modeling, revenue or earnings forecasting, or communications of guidance to the financial markets. In other words, he has no subject matter knowledge about the items that were allegedly misstated. His territory was limited to Europe, which meant that he had no visibility into 86% of the company's business. He admitted he had no responsibility for the wild health business line, whose performance the plaintiffs here also take issue with. All that happened is he claims to have overheard a fragment of a discussion about an error involving some type of double counting in the first quarter of 2022, but he couldn't say what the error was, what it related to, how large it was, whether it was material, who made it, or whether the error was intentional or inadvertent, or what impact it had on the forecast for the remaining nine months of the year. That's pages 48 to 52 of the transcript that the plaintiffs attached to their motion. That's a fundamental problem under Rule 9b, under the PSLRA, and under any pleading standards. Or put it another way, if you put it in journalistic terms, the basic who, what, when, where, and why is missing. That witness has no foundation. He also couldn't be sure, and this is also important, if what he heard occurred in May of 2022 before the disputed guidance was issued, or actually several months later in July of 2022 before the company ended up reducing its guidance. And that timing is critical to pleading scienter, because if it was in July after the disputed guidance was issued, then it couldn't establish any knowingly false statement back in May. Now, the starboard witness also acknowledged that he knows that the audit committee of the company hired independent counsel, conducted an investigation. He was actually interviewed. He doesn't know what the outcome was, but the plaintiffs do, because it's in the starboard complaint they want a copy from, which is that the independent investigation concluded that there was no evidence of misconduct by management. So this factual record does not come close to meeting the standard in Sherman or in any of the other cases that Sherman cited, that Judge Engelmeyer cited, about requiring factually detailed corroboration for allegations lifted from another proceeding. So even if they took all those allegations and put them into the complaint today, the amendment would still be futile. The complaint would still have to be dismissed, because that starboard witness does not have sufficient proximity to the facts establishing falsity, sufficient detail about those facts to establish fraud with a requisite particularity. And that's consistent with the standards in employees' retirement system of the Virgin Islands versus Blanford, from this court in 2015, and Novak versus Kassex in 2000. Because just like if they cite to an SEC filing like a 10-K, the entire filing is incorporated by reference. If they want to cite to anything in that witness's deposition, the entire deposition is fair game, including all those admissions that I finally got from him when I took his deposition in London, in which he admitted he really didn't know much. So what they're saying is kind of no different than if a janitor had walked by the boardroom and overheard a snippet of a conversation and told the plaintiffs. That's not a sufficient basis to subject a public company to allegations of fraud, years of discovery, millions of dollars of costs. Aside from the 9B problem, it's a basic Twombly-Iqbal issue. The allegations have to be plausible, not just conceivable. And the starboard witness doesn't have enough information to establish a plausible claim of fraudulent opinions not honestly held at the time expressed. Now, let's talk about the other corroboration that Ms. Weinreich mentioned. First of all, it's interesting that she didn't mention witnesses 3, 4, and 5, and in her reply brief she walked away from them and admitted that witnesses 3, 4, and 5 really have no knowledge or information bearing on this appeal. That's footnote 5, page 11 of their reply brief. So we're really just looking at witnesses 1 and 2 to prop up their supposed reliance on the starboard witness. Now, plaintiffs say witness 2 corroborates the starboard witness because that witness supposedly said management manipulated guidance each quarter to fit the message they wanted to send. That's what they said at page 6 of their reply. But that's conclusory, not factual. There is no supporting detail for that in the complaint, and that itself does not meet the 9B particularity standards. What witness 2 actually supposedly said, and it's in paragraph 70 of the complaint, was really three things. Number one, there was a lot of last-minute activity. I think the witness called it a fire drill in getting the forecast finalized. Okay, that's not fraud. Maybe they could be better organized. That's not fraud. Management had to make corrections and adjustments for the fact that lower-level salespeople didn't always input accurate information into their system. Well, that's not fraud. But it actually describes an effort to correct for possible errors from lower-level personnel before giving guidance. And finally, the witness 2 said the CEO and CFO had to sign off on guidance before it was given. Well, Your Honors, that's their job. That's not fraud. So none of that corroborates the starboard witness at all. Witness 1, who they also rely upon, fares no better. He's the junior FP&A analyst several levels down from the CFO, whose views are demonstrably unreliable, because according to paragraph 69 of the complaint, he says forecasts must be wrong and misleading if they include anticipated business not yet under contract. That's not how forecasts work. General Motors doesn't have contracts signed for every car and truck it's going to sell during the year when it gives guidance at the beginning of the year. Costco and Target don't know how many loaves of bread are under contract or how many cans of soup, much less what the Christmas season is going to look like. So there was no requirement that forecasts, which are inherently forward-looking, have to be based only on signed contracts. So that's the problem of relying on a junior analyst. He also says the numbers must have been manipulated because, you know, he gave draft projections to his boss, who then reviewed it and discussed it with her own boss, and the final forecast differed somewhat from what the junior analyst put together. Well, it's the job of more senior financial professionals to bring their judgment and experience to bear and not just pass through to the market whatever a junior analyst happens to produce. Just as this court and my firm's clients, for instance, wouldn't want me indiscriminately filing a brief put together by, no disrespect to my colleagues here, by a junior associate without bringing my own judgment and experience to bear. So it's not a fraud on the court any more than it was a fraud on the market for the VP of Finance, the head of financial planning and analysis, and the CFO of LivePerson to refine the projections before issuing guidance. Now, Plano is saying in their reply at page four that the company admitted inflating guidance, but that's just not true. All they allege is that at time one, the company had a forecast of X, and months later at time two, there was disappointing performance of Y. That's not admission of falsity. That's fraud by hindsight, and that does not establish the requisite facts. So we would submit, Your Honor, that Judge Engelmeyer's judgment should be affirmed, both on the record that was before him and if you even include the supplemental materials in the Plano's file. Thank you. Thank you very much, counsel. Ms. Weinberg, you have reserved two minutes and 15 seconds. We'll put them on the clock. Thank you very much, Your Honor. No, we won't put them on the clock. We'll let you go, but we know how to count. That's good to hear, Your Honor. The first thing I'm going to address is counsel's point that this case is not about historical figures. And that's true. It's not about historical figures. It's about misleading guidance. And guidance, though forward-looking, can still be misleading if defendants at the time, as was the case here, had no reasonable basis for those guidance numbers and if there were false inputs, as there were here. We have the double-counted revenue, and we have the tens of million dollars worth of baseless bookings revenue that were included in that guidance number that was disclosed in the first quarter of 2022. Counsel also spent a lot of time talking about the starboard exhibits and made it seem like the starboard CW didn't really say much of anything or shouldn't be credited because of his role in the company. Very important distinction here. We are not relying, and the starboard action did not rely on the starboard CW, whose identity is now known, because of his role and responsibilities, but rather because of his attendance on a conference call during which he heard firsthand Defendant Collins admit that the guidance numbers were inflated. However, we don't have only that. If you look at the allegations in the starboard complaint, the amended starboard complaint, there were numerous other witnesses that were deposed in the starboard action that corroborate that those inflations took place. That in, not July, but in March and April of 2022, Defendant Collins instructed that the model used to forecast guidance include, as the result of what was called a POW exercise, tens of millions of dollars' worth of baseless bookings revenue so that they could meet the midpoint of guidance that they had previously disclosed. So even if counsel is correct, and even if three years after this conference call the starboard CW was somewhat confused about whether he heard about the admission in July or May, is irrelevant, because we know that that inflation was directed in March or April, and the July admission occurred before defendants issued the guidance reduction in the second quarter of 2022, where they attributed false reasons for that reduction. They didn't note anything about the inflation that occurred the quarter before, but attributed it 100 percent to other causes, including the divestiture of low-quality revenue and the ramp-up of the sales force. I see my time has expired, Your Honors. If there's any other issue I may address, I'd be happy to do so. No, thank you very much. Thank you to both counsel for outstanding arguments. It was very helpful. We will take the case under advisement. Well argued. Thank you.